### McFARLAND v. SHARKEY et al.

(Supreme Court, Appellate Division, First Department. March 8, 1912.)

1. WILLS (§ 166*)—CONTEST—UNDUE INFLUENCE.
>    In an action to contest a will, evidence *held* insufficient to show undue influence of the attorney who drew the will.
>    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 421–437; Dec. Dig. § 166.*]

2. WILLS (§ 155*)—CONTEST—UNDUE INFLUENCE.
>    The mere compliance by an attorney with a request of a testator to procure for him information as to certain Catholic charities whom he desired to make his beneficiaries would not constitute undue influence which would avoid the will.
>    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 375–381; Dec. Dig. § 155.*]

3. WILLS (§ 333*)—CONTEST—VERDICT—SUFFICIENCY—NECESSITY OF REQUEST FOR SPECIFIC FINDINGS.
>    In an action to contest a will, a verdict that the writing produced was the last will of the testator is not improper as being neither general nor special, where no request for special findings on specific questions of fact was made.
>    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 788, 789; Dec. Dig. § 333.*]

Appeal from Trial Term, New York County.

Action by Mary McFarland against John T. Sharkey and others. From an order setting aside a verdict for defendants and granting a new trial, defendants appeal. Reversed.

See, also, 144 App. Div. 935, 129 N. Y. Supp. 1133.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date; & Rep'r Indexes

Argued before CLARKE, McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

William L. Tierney, for appellants.

A. P. Bachman, for respondent.

MILLER, J. Daniel Sheehan died in St. Vincent's Hospital on the 20th of March, 1907, at the age of 77 years. Five days before his death, he made what is claimed to be his last will and testament. He was a bachelor and had accumulated an estate of about $60,000. His next of kin were five nephews and nieces. To two nieces he gave the sum of $10,000 each, one niece he gave $500, and to one nephew he gave $250. The other nephew he did not mention. He gave $500 to the Sister of Charity who nursed him, $500 to the Reverend Thomas J. Doyle, to be used for masses for himself and his deceased relatives, and $5,000 each to the Superior of the Little Sisters of the Poor in New York City, the Superior of the House of the Good Shepherd in New York City, the Superior of the House of the Holy Family in New York City, the president or other chief executive of the Mission of the Immaculate Virgin in Lafayette street, New York City, the Superior of St. Joseph's Hospital in the Borough of the Bronx, the Superior of the Foundling Hospital in East Sixty-Eighth street in New York City, the Mother Superior of the Dominican Convent of Our Lady of the Rosary in New York City, and the Superior of Seton Hospital for Consumptives at Spuyten Duyvil; and he made the Society of St. Vincent De Paul in New York City his residuary legatee. The will was admitted to probate by Surrogate Thomas, and thereafter this action was brought by the niece to whom the legacy of $500 was given. She alleged in her complaint that the alleged will was not executed in conformity with the requirements of law, that the deceased did not possess testamentary capacity, and that the alleged will was procured by the fraud and undue influence of the defendants, Sharkey and Gilliece. The attorney who tried the case for the plaintiff also represented the nephew, Francis X. Sheehan, who was not mentioned in the will and who had for many years been living in Ireland. There is in the record an unverified answer of said Francis X. Sheehan, which contains an averment that the will was procured by the undue influence of James J. O'Beirne. So far as I am able to discover, it does not appear when or upon whom that was served, and it is not pretended that it was served upon any of the defendants who are seeking to sustain the will, or that they had ever heard of it until the close of the evidence. when the court, at their request, charged that:

"There is no issue in this case as to any undue influence on the part of James J. O'Beirne, because, if such issue is tendered by the answer of Francis Sheehan, it was never served upon these defendants, and there is no such issue on these pleadings."

The jury found for the proponents of the will, whereupon the court set aside the verdict for error in charging said request on the ground that, even if such issue was not tendered by the pleadings, it had been litigated by the parties.

[1] We are unable to discover anything in the course of the trial to suggest that the alleged undue influence of said O'Beirne was an issue in the case, until it came to the charge of the court. He was called as a witness by the plaintiff to testify to the instructions given him by the testator and the circumstances surrounding the execution of the will. But there was nothing in that circumstance to suggest that the plaintiff was asserting that he had exercised undue influence upon the testator. It is said that it was sufficient to serve the answer of Francis X. Sheehan upon the plaintiff with whom he made common cause. It does not even appear in this record that that answer was served on the plaintiff. It was produced at the trial by the attorney of record of Francis X. Sheehan, who was the plaintiff's trial counsel. Assuming that the exercise of undue influence by O'Beirne was an issue in the case, we think that the order setting aside the verdict was improper for the reason that there was absolutely no evidence whatever to support that charge. O'Beirne was a stranger to the testator. He had no personal interest whatever to serve. The testator, who was evidently a Roman Catholic, requested the defendant Sharkey to procure a lawyer who was also a Roman Catholic. Sharkey had known the testator for some years and had made an arrangement with him to bury him and erect a headstone at his grave. Upon Sharkey's request, O'Beirne called upon the testator at the hospital, received the instructions for his will, and two days later called again, when it was executed. He was called as a witness for the plaintiff and frankly disclosed all that occurred on both occasions. Apart from his testimony, there is nothing in the case upon which to base a charge of undue influence exercised by him, and according to that testimony, the testator gave intelligent reasons, the truth of which no one disputes, for treating his nephews and nieces as he did.

[2] He desired to divide the bulk of his property among Catholic charities, and he requested O'Beirne to obtain information and to give him advice on that head. But compliance with that request did not constitute the exercise of undue influence. Having received that information and advice, the testator exercised his own judgment, and made a will which was his own free, voluntary, and intelligent act. There is not a particle of evidence that O'Beirne had any motive to, or in fact did, exercise undue influence over the testator. Giving requested advice is not the exercise of undue influence.

While the will was made but a few days before the death of the testator, the evidence plainly shows that he was in possession of his mental faculties, and even if there was evidence to go to the jury on the question of testamentary capacity or of undue influence exerted by others than O'Beirne, a finding of the jury in favor of the contestants on either of those issues would be so clearly against the weight of evidence that we should not hesitate to set it aside. A verdict, therefore, in favor of the will, should not be disturbed except for some substantial reason.

[3] The jury were directed to find either: (1) "That the writing produced is the last will of Daniel Sheehan;" or (2) "that the writing

produced is not the last will of Daniel Sheehan." Their verdict was announced thus, "We, the jury, find that the writing produced is the last will of Daniel Sheehan"; and, while that verdict conformed to the issue to be tried, it is claimed that it is illegal for being neither a general nor a special verdict. It is sufficient to say on that head that, if the plaintiff desired special findings on specific questions of fact, an appropriate request should have been made.

What we have already said disposes of the alleged errors in the admission of evidence bearing upon the issue as to testamentary capacity. The plaintiff was given the widest latitude throughout the trial, she has had one chance before the surrogate, another in the Supreme Court before a jury, and we think it is time the contest ended.

The order appealed from should be reversed, and the verdict of the jury reinstated. All concur.

