OPINION OF THE COURT
Michael H. Feinberg, S.
In this contested probate proceeding, petitioner moves for an *898 order suppressing the transcript of the deposition of the attorney-draftsman (CPLR 3116 [e]).
The propounded instrument was executed January 7, 2000. The decedent died January 9, 2000, two days later. Under the propounded instrument, the decedent left her residuary estate to Michael Pizzi, the petitioner. The decedent had an earlier will, dated August 31, 1987, in which she left her estate to her brother Carmine Mancuso and sister Antoinette Mancus (sic). If they predeceased her, which they did, she left $10,000 to the Servants of Relief for Incurable Cancer and the balance to her cousin Sebastian Grasso and his wife, Gloria Gras so, the objectants.
The objectants objected to the probate of the January 9, 2000 instrument on the grounds that the decedent lacked the physical and testamentary capacity to make a will and that the execution of the will was the product of petitioner’s fraud and undue influence. In the course of discovery, the objectants deposed the attorney-draftsman. After receiving the transcript, petitioner made the instant motion to suppress the transcript on the ground that it was garbled and replete with errors. Objectants agreed that there are errors in transcription but denied that the errors required suppression of the entire transcript. Moreover, the objectants denied that there were inaccuracies in transcribing the questions and responses concerning petitioner’s alleged undue influence.
In a prior decision, this court held that petitioner failed to establish that the entire transcript should be suppressed and set the matter down for a hearing on whether portions of the transcript should be suppressed (Matter of Mancuso, NYLJ, Feb. 4, 2003, at 20, col 6). Before the hearing began, the parties agreed to corrections to all of the alleged substantial errors except one. A hearing was then held on whether that one specific question and answer should be suppressed. The matter was tried before a court attorney-referee over three days.
In order to determine petitioner’s objection, it is necessary to provide the context in which the disputed question and answer arose. The decedent lived with her elderly brother in their home on 7806 14th Avenue, Brooklyn, New York. In 1999, petitioner told the attorney that the decedent and her brother were considering entering a nursing home and asked the attorney to advise them of their options. In December 1999, petitioner again spoke to the attorney about advising the elderly pair. The attorney made an appointment and visited them at their house.
*899 The attorney testified that when he visited the decedent, the decedent, her brother, petitioner, and petitioner’s mother were present. The decedent told him that she wanted to go to a nursing home. The attorney suggested that they try home health care first. During their conversation, the attorney asked the decedent if she had a will. She said she did and that it left everything to her brother, and if anything happened to him, to a cousin in Florida that she hadn’t seen in years. The object-ants’ attorney followed up with the following questions and answers:
“Q: You testified earlier that you were surprised she was leaving her estate to cousins which she said she hasn’t seen in a while?
“A: It wasn’t so much I was surprised. I just laughed at it.
“Q: You laughed so she could hear you?
“A: I laughed inside because she was leaving a will to cousins she hadn’t seen in years.
“Q: Did you say anything about that?
“A: I said you have to change your will.”
It is this last exchange which the petitioner wishes suppressed.
At the hearing, the attorney-draftsman testified that at no time did he tell the decedent that she would have to change her will. He testified that he believed the question was, “did she say anything about that?” He asserted that the decedent told him that she had a will, that she wanted to change the beneficiaries and she told him what she wanted.
The attorney representing petitioners at the deposition testified that he did not remember the questioned passage. After his recollection was refreshed by reading his affidavit in support of the motion, he testified that he specifically recalled the disputed exchange. He testified that he believed the question was, “Did she [the decedent] say anything about that?” to which the attorney responded that the decedent said, “I have to change my will.”
The next witness was an employee of the transcribing service. She testified that the office procedure is to take the stenographic record, in the form of a disk, from the reporter and, using software, collate and print out the transcript. The disks are filed and saved for six months. The agency no longer had the original disk, and had no other records relating to the preparation of the transcript.
The court reporter who transcribed the deposition lived in New Jersey and refused to come to New York to testify. *900 However, she supplied an affidavit saying that her notes from the deposition were stored in her basement and destroyed when the basement was flooded. She did send a copy of the disk. Petitioner retained a second agency to transcribe a new transcript from the disk. Significantly, the new transcript is free from most of the errors of the original transcript. However, the objected to exchange is reproduced verbatim.
The last witness was the guardian ad litem who attended the deposition. The guardian ad litem candidly admitted that he did not remember the exact words used in the disputed exchange, but believed that the disputed passage was in accordance with his recollection of the question and answer given at the deposition. He remembered that the attorney-draftsman thought that her present will was amiss. On cross, he agreed that in a later exchange, the attorney-draftsman testified that he said, ‘You’re leaving everything to your cousin you haven’t seen in years here” and that the decedent responded, ‘Yes, I have to change it.”
CPLR 3116 (e) provides that errors of the stenographer in transcribing the deposition are waived unless a motion to suppress the transcript is made promptly after the error is discovered or should have been discovered. A motion pursuant to CPLR 3116 (e) is the sole method of suppressing a deposition, transcript because of errors in transcription (Peters v State of New York, 41 Misc 2d 980 [1964], affd 22 AD2d 764 [1964]).
The statute “provides no guidance as to what sort of irregularities merit suppression” (Principale v Lewner, 187 Misc 2d 878, 879 [2001]; Siegel, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3116:2, 2003 Pocket Part, at 165). The first issue is whether suppression is available for limited transcription errors. The prior cases on point involved allegations that the entire transcript, or a portion, was so garbled that it should be suppressed (see, Peters v State of New York, supra; Principóle v Lewner, supra). Relief under CPLR 3116 (e) is not limited to motions suppressing the entire transcript. The court in Principóle v Lewner recognized the possibility of suppressing a portion of the transcript. There is no reason why a particular passage cannot be stricken upon the requisite showing.
In a motion to suppress under CPLR 3116 (e), the moving party has the burden of proving that the passage was inaccurately transcribed and that the error is prejudicial to the movant (Messinger v Yap, 203 AD2d 870 [1994]; Principale v Lewner, supra at 880). In the prior cases, the fact that the *901 transcript was garbled was apparent from a reading of the transcript itself (see, Peters v State of New York, supra; Principale v Lewner, supra). In the instant case, the error is not apparent.
Where the error is not apparent, the court should suppress the transcript only if the error is established by clear and convincing evidence. Otherwise, the party being deposed should correct the transcript by the usual procedure authorized by CPLR 3116 (a). This section provides that when the person being deposed disputes the answer imputed to him in the transcript, he may correct the transcript by making changes “in the form or substance” at the end of the deposition or on a separate errata affidavit (CPLR 3116 [a]; see, Weinstein-KomMiller, NY Civ Prac 3116.03). While the changes are often typographical errors, it is not limited to minor corrections. The section has been applied to authorize substantive corrections to the answer, including a blanket denial that the deponent gave the answer transcribed (see, e.g., Boyce v Vazquez, 249 AD2d 724 [1998]; Dorset Caterers v Nassau & Suffolk Dining Car & Rest. Assn., 67 Misc 2d 687 [1971]; Goldsmith, To Err is Human, To Correct. . . Divine, NYLJ, June 23, 2003, at 3, col 1). The court has great discretion in allowing corrections under CPLR 3116 (a), even allowing changes to the transcript to be filed after it has been subscribed (see, Roberts v Ausable Chasm Co., 47 AD2d 979 [1975]).
Suppression under CPLR 3116 (e), on the other hand, is a drastic remedy. Where the witness corrects a transcript under CPLR 3116 (a), the jury may hear both the original and corrected responses (see, Boyce v Vazquez, supra; Van Son v Herbst, 215 App Div 563 [1926]). Suppression under CPLR 3116 (e) results in the trier of fact never hearing the disputed answer. Therefore, if there is a question of fact as to whether the transcript is correct, the issue should go to the trier of fact, to give such weight to the original (or corrected) passage as the trier deems fit (Principale v Lewner, supra). Accordingly, in order to suppress an allegedly improper transcription, the movant must show that the disputed passage is clearly in error and that he or she will be prejudiced unless the passage is suppressed. If there are any doubts, the passage should be corrected pursuant to CPLR 3116 (a).
Applying this standard, petitioner has failed to meet his burden in showing that the disputed passage is clearly in error. It is true that the numerous errors in the original transcript mean that the certification by the stenographer is of little *902 weight (Principale v Lewner, supra). Nonetheless, the evidence adduced at the hearing does not clearly establish that an error was made in transcribing the disputed passage.
The disputed passage is internally consistent and the answer is not patently implausible. Therefore, in order to succeed, they must show that both the question and answer were incorrectly transcribed. The attorney testified that the question posed was whether the decedent said anything, not whether he, the attorney, said anything and that his response was she had to change her will, not his response that “You have to change your will.” This was seconded by petitioner’s attorney at the deposition, although his recollection had to be refreshed by his prior affidavit, done after the deposition.
On the other hand, the guardian ad litem did not testify that the passage was in error. Indeed, he believed that the passage was consistent with the tenor of the attorney’s testimony at the deposition. Objectant’s attorney did not testify, but his affidavit in opposition states that the testimony was recorded accurately and is consistent with other statements made by the attorney at his examination. The most probative evidence is that the new transcript prepared from the disk was almost error free, showing that most, if not all, of the errors in the original transcription were the result of the transcribing service’s software, rather than the stenographer’s failure to faithfully transcribe the questions and answers. In the new transcript, the disputed passage was transcribed without change. Based upon this record, the court cannot say that the disputed passage was mistranscribed. It is a matter best left for the trier of fact.
Even if petitioner established that the disputed passage was mistranscribed, he has not shown that the alleged error was so material as to invoke the drastic remedy of suppression. Harmless errors will not be suppressed and such errors may be corrected in the usual way, as set forth in CPLR 3116 (a) (Weinstein-Korn-Miller, NY Civ Prac 3116.03, at 31-438). The alleged error in transcription must go to the heart of the matter in controversy. A review of the facts in Principale v Lewner (supra) shows how hard it is to suppress a transcript. In Principale, the defendant was sued for dental malpractice. When he received a copy of the transcript, he moved to suppress the transcript. The court noted that the reporter failed to transcribe or garbled certain portions of defendant’s testimony. Nonetheless, the court refused to suppress the entire transcript or even portions of the transcript.
*903 “While the errors render some portions of defendant’s testimony unclear, they do not appear to contradict his claim that he did not commit malpractice in his treatment of plaintiffs teeth, and that the problems with plaintiffs teeth arose because she failed to keep appointments * * * [and] thus failed to show that the errors are other than harmless” (id. at 881).
In the instant case, the disputed passage does not undermine petitioner’s claim that the execution of the proffered instrument was the decedent’s voluntary act and not the result of undue influence. The giving of advice is not undue influence. “The giving of advice and the use of argument and persuasion do not constitute ground for avoiding a will made by a competent testatrix even if the will was made in conformity with the advice so given” (Smith v Keller, 205 NY 39, 44 [1912]).
Accordingly, the courts have held that it is not undue influence for a beneficiary to advise the decedent to make a will in a particular way, even if the decedent acts in accordance with it (see, Smith v Keller, supra; Matter of Barnes, 284 App Div 743 [1954], lv denied 285 App Div 1216 [1955], lv dismissed 308 NY 833 [1955]; Matter of Seagrist, 1 App Div 615 [1896], affd 153 NY 682 [1897]; Matter of Fleischmann, 176 App Div 785 [1917]; McFarland v Sharkey, 149 App Div 552 [1912]; In re O’Connor’s Estate, 51 NYS2d 549 [1944]; In re Campbell’s Will, 136 NYS 1086 [1912]; Seaman v McLaury, 142 App Div 547 [1911]; Matter of McGraw, 9 App Div 372 [1896]). If it is not undue influence for a beneficiary to advise the decedent to draw a new will, it cannot be undue influence for an attorney to so advise his client (see, McFarland v Sharkey, 149 App Div 552 [1912]). “[T]he law does not require that the making of the will should originate with the testator provided [that] he intended it as his own will and understandingly adopted it” (Matter of Fleischmann, 176 App Div 785, 788 [1917]).
Based on the above, the motion to suppress the disputed passage is denied.